UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL DOCKET |
| VERSUS | No. 10-154 |
| DAVID WARREN, ET AL | SECTION "I" |

## ORDER AND REASONS

Defendant, David Warren ("Warren"), moves this Court to find that the superseding indictment[1] improperly joins him with his four codefendants. Warren moves for a severance of those counts that directly pertain to him, i.e., counts 1 and 2, owing to the alleged prejudice he will suffer as a result of joinder. Because this Court finds that joinder is proper, that defendant has made an insufficient showing of prejudice, and that jury instructions will suffice to cure any potential prejudice that may arise during the course of the trial, the motion is **DENIED**.[2]

I.  BACKGROUND

This case concerns the alleged shooting and burning of Henry Glover in the immediate aftermath of Hurricane Katrina, the alleged obstruction into a federal investigation of those crimes, and the circumstances surrounding such events. The government's eleven-count superseding indictment charges five former and current New Orleans Police Department

---

[1] Warren filed this motion on August 6, 2010. The government filed a superseding indictment the same day. Although Warren's motion references the original indictment, this Order and Reasons looks to the superseding indictment as the controlling document.

[2] As noted above, Warren filed this motion on August 6, 2010. The government responded on August 13, 2010. During a September 1, 2010 status conference, the Court ordered Warren, and any other defendant who chose to do so, to brief the issue of whether counts 3 and 4 are properly joined with the superseding indictment's other counts by September 9, 2010. In his supplemental briefing, Warren asserted that he would not oppose severance of counts 3 and 4. However, he maintained that the Court should sever counts 1 and 2. R. Doc. No. 173.

("NOPD") officers in connection with these alleged crimes. The government has not alleged a conspiracy. Furthermore, no officer is charged in every count of the superseding indictment.

As stated, Warren is charged in counts 1 and 2 of the superseding indictment. Count 1 charges that Warren, while acting under color of law as an NOPD officer, shot Henry Glover on or about September 2, 2005 without legal justification, willfully depriving Glover of the right to be free from the use of unreasonable force by a law enforcement officer. The government alleges that such crime involved the use of a dangerous weapon and an attempt to kill, resulting in bodily injury to, and the death of, Henry Glover. Count 2 charges that, on or about September 2, 2005, Warren possessed, carried, and discharged a rifle during the commission of the civil rights offense charged in count 1 and that such discharge caused Henry Glover's death. The government further alleges that Henry Glover's death involved circumstances constituting murder.

Dwayne Scheuermann ("Scheuermann") and Gregory McRae ("McRae") are charged in counts 3 through 7. Count 3 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers, deprived EK and WT of the right to be free from the use of unreasonable force by law enforcement officers and caused bodily injury to EK and WT.

Count 4 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers, and while aiding and abetting one another, unreasonably seized WT's vehicle by burning it without legal justification, thereby depriving WT of the right to be free from an unreasonable search and seizure by law enforcement officers. Count 4 further alleges that Scheuermann and McRae used fire and a dangerous weapon during the alleged offense.

Count 5 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers and without legal justification, while aiding and abetting one another, burned Henry Glover's body, depriving Henry Glover's family of their rights to have access to the courts and to seek legal redress for a harm.  Count 5 also alleges that Scheuermann and McRae used fire and a dangerous weapon during the alleged offense.

Count 6 alleges that on or about September 2, 2005, Scheuermann and McRae aided and abetted one another in knowingly destroying evidence with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI").  Specifically, count 6 charges these defendants with burning a 2001 Chevrolet Malibu containing the body of Henry Glover with the intent to impede, obstruct, and influence the investigation of the September 2, 2005 shooting of Henry Glover by a NOPD officer.  Count 7 charges Scheuermann and McRae with aiding and abetting each other and using fire to commit the felonies alleged in counts 4, 5, and 6.

Count 8 charges both Robert Italiano ("Italiano") and Travis McCabe ("McCabe"). Count 8 alleges that on or about December 2, 2005, Italiano and McCabe, in relation to and in contemplation of a matter within the jurisdiction of the FBI, aided and abetted one another in knowingly altering, concealing, covering up, falsifying, and making entries in documents with intent to impede, obstruct, and influence the investigation and proper administration of a matter within federal jurisdiction.  Specifically, count 8 charges that Scheuermann and McRae authored and submitted a false and misleading official report with the intent to impede, obstruct, and influence the investigation of the September 2, 2005 shooting and burning of Henry Glover.

Count 9 alleges that on or about April 21, 2009, Italiano knowingly and willfully made materially false statements and representations in a matter within the jurisdiction of the FBI

3

when he told FBI agents investigating the shooting and burning of Henry Glover that: (1) no report was written after the shooting by Warren on September 2, 2005; (2) no missing persons reports were being generated after Hurricane Katrina; and (3) he was not aware of a connection between the September 2, 2005 shooting by Warren and the burning of a car and body behind the Patterson Road levee.  Count 9 further alleges that when Italiano made such statements to the FBI, he knew that: (1) a report was written after the September 2, 2005 shooting by Warren; (2) a missing persons report was generated for Henry Glover; and (3) there was a connection between the Warren shooting and the burned car and body behind the Patterson Road levee.

      Count 10 charges McCabe with knowingly and willfully making materially false statements and representations in a matter within the jurisdiction of the FBI when he told FBI agents investigating the shooting and burning of Henry Glover that: (1) he, in collaboration with Sergeant Purnella Simmons ("Sergeant Simmons"), wrote and typed the incident report that documented the September 2, 2005 shooting by Warren; (2) he interviewed Officer Linda Howard ("Officer Howard") with Sergeant Simmons before writing the incident report; and (3) the incident report submitted to the NOPD was true and accurate.  Count 10 further alleges that when McCabe made such statements to the FBI he knew that: (1) he did not write the incident report in collaboration with Sergeant Simmons; (2) he did not interview Officer Howard; and (3) the incident report submitted to the NOPD was false and inaccurate.

      Count 11 charges that on or about July 31, 2009, McCabe knowingly made a material declaration under oath in a proceeding before a grand jury of the United States.  Specifically, count 11 alleges that McCabe testified falsely that: (1) he, in collaboration with Sergeant Simmons, wrote the incident report which documented the September 2, 2005 shooting by Warren; (2) he interviewed Officer Howard before writing the report; (3) he did not connect the

Warren shooting to the burned car on the Patterson Road Levee until it appeared in the newspaper; and (4) the incident report submitted to the NOPD was true and accurate. Count 11 further alleges that when McCabe made such statements he knew that: (1) he did not write an incident report in collaboration with Sergeant Simmons; (2) he did not interview Officer Howard; (3) he had been aware, since 2005 (prior to any media reporting), that the Warren shooting and the burned car on the Patterson Road Levee were connected; and (4) the incident report submitted to the NOPD was false and inaccurate.

II.   JOINDER

Warren moves this Court to find that the superseding indictment improperly joins him with Scheuermann, McRae, Italiano, and McCabe. Federal Rule of Criminal Procedure 8(b) which governs joinder of defendants, states:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"Rule 8(b) does not require . . . that each defendant have participated in the same act or acts" in order for joinder of defendants to be proper. United States v. Krenning, 93 F.3d 1257, 1266 (5th Cir. 1996) (citing United States v. Dennis, 645 F.2d 517, 520 (5th Cir. Unit B May 1981), abrogated in part by United States v. Lane, 474 U.S. 438 (1986)). Instead, "All that is required is a series of acts unified by some substantial identity of facts or participants." Id. (internal quotation marks omitted).[3]

---

[3] As the United States Court of Appeals for the Tenth Circuit recently explained, "Ultimately, [t]he test for a proper joinder is a common thread to each of the defendants, which may be established by common evidence as to various counts." United States v. Caldwell, 560 F.3d 1202, 1212 (10th Cir. 2009) (alteration in original) (internal quotation marks and citation omitted). The United States Court of Appeals for the Second Circuit applies "a 'commonsense

5

"Generally, the propriety of joinder under Rule 8 is to be judged from the allegations of the indictment, which for these purposes are assumed to be true." United States v. Whittington, 269 Fed. App'x 388 (5th Cir. Mar. 10, 2008) (quoting United States v. Chagra, 754 F.2d 1186, 1188 (5th Cir. 1985)) (internal quotation marks omitted).  Nevertheless, the Fifth Circuit has acknowledged the power of district courts to look beyond the face of the indictment to determine whether joinder is proper.  See, e.g., United States v. Kaufman, 858 F.2d 994, 1003 ("Joinder of defendants is proper under Rule 8(b) where the record, examined broadly, presents two conspiracies substantially interrelated by their facts and participants rather than two separate and distinct conspiracies.")  More recently, the United States Court of Appeals for the Eleventh Circuit has held that, "[i]t is enough that when faced with a Rule 8 motion, the prosecutor proffers evidence which will show the connection between the charges." United States v. Dominguez, 226 F.3d 1235, 1241 (11th Cir. 2000).  Accordingly, joinder is improper only when "the indictment fails to show and the prosecutor fails to proffer a sufficient basis in the expected evidence to justify joinder." Id.

"As a general rule, persons indicted together should be tried together . . . ." United States v. Valdez, 453 F.3d 252 (5th Cir. 2006) (internal quotation marks omitted).  "The government need not allege a conspiracy in order to join defendants . . . ." Dennis, 645 F.2d at 520.  As the United States Supreme Court has explained, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed 317 (1993).  "Joint trials play a vital role in the criminal justice system" by "promot[ing] efficiency" and "avoiding the scandal and inequity of inconsistent

---

rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." United States v. Rittweger, 524 F.3d 171, 177 (2nd Cir. 2008) (internal quotation marks and citation omitted).

verdicts." Id. (internal quotation marks and citation omitted). Accordingly, "The prerequisites for joinder are liberally construed in favor of joinder." United States v. Liveoak, 377 F.3d 859, 864 (8th Cir. 2004).

Warren essentially makes three arguments regarding why joinder in this case is improper. First, Warren asserts that because he is charged only in the first two counts of the eleven-count superseding indictment, joinder is improper.[4] Warren argues, "the remaining counts deal with other defendants, other victims, and allegations of police misconduct which have nothing to do with Warren." Id.

As the Fifth Circuit has held, "It is clear that there is no misjoinder simply because one defendant is not charged in each count of the indictment since Rule 8(b) clearly states that 'all of the defendants need not be charged in each count.'" United States v. Laca, 499 F.2d 922, 925 (5th Cir. 1974). Accordingly, the mere fact that Warren is charged in only two counts of the eleven-count superseding indictment does not, by itself, make joinder improper.

Second, Warren asserts that "the alleged 'series of acts' do not constitute the same offense."[5] Summarizing the "series of acts" alleged in the superseding indictment, Warren writes:

> Defendant David Warren is charged in counts one and two with [attempting to kill and] killing Henry Glover while acting under the color of law and using a dangerous weapon. He is not charged in any of the remaining nine counts of the indictment which allege that other members of the New Orleans Police Department [] deprived "EK and WT" of their civil rights by physically assaulting them; unlawfully seized WT's vehicle; burned WT's car with Henry Glover inside of it which deprived Glover's decedents [sic] of the right to have access to courts and seek legal redress; obstructed justice; used fire to commit a felony; obstructed a

---

[4] See R. Doc. No. 131-1, pg. 2.
[5] R. Doc. No. 131-1, pg. 2.

> federal investigation; made false statements to FBI agents; and made false statements to the grand jury.[6]

Although Warren argues that joinder is improper because such presentation of the facts reveals that "[n]one of [the charges in counts 3 – 11] have anything to do with"[7] him, this Court disagrees. As noted above, Rule 8(b) permits an indictment to "charge 2 or more defendants if they are alleged to have participated . . . in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b) (emphasis added). "Rule 8(b) does not require . . . that each defendant have participated in the same act or acts" in order for joinder of defendants to be proper. Krenning, 93 F.3d at 1267. Instead, "All that is required is a series of acts unified by some substantial identity of facts or participants." Id.

The superseding indictment and the evidence previewed by the government[8] establish that Warren's alleged shooting of Henry Glover, the alleged beating of EK and WT, the alleged burning of a car containing Henry Glover's body by Scheuermann and McRae, the alleged obstruction of the investigation into Henry Glover's shooting, and the alleged false statements made in connection with such investigation share many of the same facts and participants and will require resort to much of the same evidence and many of the same witnesses. According to the government, "[t]he shooting of Henry Glover and the burning of his body involved the same victim, took place within a few hours on the same day, and at locations that are only a short distance apart."[9] The government further asserts that many of the witnesses to the shooting, beating, burning, and false report are the same.[10]

---

[6] R. Doc. No. 131-1, pgs. 5-6.
[7] R. Doc. No. 131-1, pg. 6.
[8] R. Doc. No. 185, pgs. 3-5.
[9] R. Doc. No. 129, pgs. 3-4.
[10] R. Doc. Nos. 129 & 185.

8

Given that many of the charges alleged in the superseding indictment and the evidence previewed by the government bear on the shooting of Henry Glover, Warren's alleged involvement in connection with such shooting, and the circumstances leading up to the burning of Henry Glover's body, this Court finds that a substantial identity of facts exists among the superseding indictment's charges.  See id.  Accordingly, because the Court finds that the crimes alleged against the defendants in the superseding indictment are sufficiently related to one another by some "substantial identity of facts or participants," joinder is proper.  Krenning, 93 F.3d at 1267.

Although Warren cites a number of circuit court cases to support his basic argument that joinder is improper because the alleged "series of acts do not constitute the same offense,"[11] he fails to advise the Court how the cited cases apply to the facts of his case.  The Court, in turn, finds the cited cases distinguishable.

For example, Warren cites United States v. Satterfield, 548 F.2d 1341 (9th Cir. 1977), in which the government charged two men, Merriweather and Satterfield, together in a ten-count indictment relating to five Oregon bank robberies.  Id. at 1343.  The indictment charged that "Merriweather alone had perpetrated the first, second, and fifth robberies, and that Merriweather and appellant Satterfield together had committed the third and the fourth [robberies]."  Id.  Furthermore, "it was never alleged that Satterfield was involved in the first, second, and fifth robberies, whether as a participant in a common plan or in any other manner."  Id. (emphasis added).  The United States Court of Appeals for the Ninth Circuit held that joinder was improper.

Noting the fact-specific nature of the joinder inquiry, the court explained that, "[s]ince a nexus between each offense charged in the indictment was absent, we cannot say, on these facts,

---

[11] R. Doc. No. 131-1, pg. 2.

that the five robberies arose out of the same series of acts or transactions." Id. at 1345. Indeed, "Joinder of Satterfield [could not] be justified merely because the robberies which Merriweather perpetrated alone were somewhat similar in character to the robberies in which both defendants participated." Id. Although the Ninth Circuit determined that "a mere showing that the events occurred at about the same time, or that the acts violated the same statutes, is not enough" to establish a "series of acts or transactions" under Rule 8(b), the court nevertheless stated that "[o]ther logical relationships might also be sufficient to establish that a group of offenses constitutes a 'series of acts or transactions.'" Id. at 1344.

Warren's case would be analogous to Satterfield if Warren was accused along with a codefendant of killing or attempting to kill Henry Glover and that codefendant was also charged by himself in the same indictment with killing or attempting to kill another unrelated victim. Instead, as noted above, the superseding indictment and the evidence previewed by the government[12] establish a "logical relationship" between Warren's alleged shooting of Henry Glover, the alleged beating of EK and WT, the alleged burning of a car containing Henry Glover's body by Scheuermann and McRae, the alleged obstruction of the investigation into Henry Glover's shooting, and the alleged false statements made in connection with such investigation. See id. Indeed, although Warren is charged in only two counts of the eleven-count superseding indictment, nine of the counts[13] explicitly mention either Warren and/or Henry Glover's shooting or burning. Accordingly, Warren's reliance on Satterfield does not persuade this Court that joinder is improper given the logical relationship between the facts currently under consideration.

---

[12] R. Doc. No. 185, pgs. 3-5.
[13] See counts 1, 2, 5, 6, 8, 9, 10, and 11. Additionally, count 7 references counts 5 and 6.

Additionally, Warren cites United States v. Gentile, 514 F.2d 1244 (5th Cir. 1975). In Gentile, Gentile and Marquart were both charged in a three-count indictment. Counts 1 and 2 charged both men with conspiring to distribute PCP and actually distributing such drug on October 23, 1972. Id. at 629. Count 3, however, charged Marquart, alone, with distribution of LSD on November 11, 1972. Id. Before trial, Gentile moved the court to find that Marquart's joinder under count 3 was improper. Id. at 630.

Reversing the district court's refusal to sever count 3, the Fifth Circuit held that joinder was improper because "the criminal activity charged against Marquart in Count 3 of the indictment was not part of a 'series of acts or transactions' under 8(b)." Id. While first stating that "acts cannot be properly joined in a multiple defendant trial if different facts and circumstances must be established to support the alleged violations," the Fifth Circuit observed that, "[t]he proof required to establish the sale of PCP on October 23, as alleged in Count 2, is entirely different from the proof required to establish the sale of LSD on November 11, as alleged in Count 3." Id. As the Fifth Circuit explained, "[t]he two transactions occurred almost three weeks apart, the sales took place at different locations, the transactions involved different drugs, and the sources from whom Marquart procured the drugs were different." Id. at 630-31.

Gentile is distinguishable on the same grounds as Satterfield: both involved indictments in which the government charged two defendants together in some counts, but then charged only one of the defendants in another count with a factually unrelated crime. Id. In contrast, the superseding indictment in this case does not simply join defendants accused of unrelated crimes that can only be proved by resorting to entirely "different facts and circumstances." Id.

Indeed, as the government correctly notes in its brief, "[m]any of the facts that must be established against Warren must also be used against other defendants and vice versa."[14] For example, to prove count 2's allegation that Warren's unjustified shooting resulted in Henry Glover's death, "the government must show the chain of events from the point of the shooting through the burning of his body to the ultimate identification of his remains through DNA analysis."[15] The superseding indictment and the evidence previewed by the government place the crimes alleged against Scheuermann and McRae squarely within this chain of events.

The government, as previously mentioned, asserts that "[e]ach of these events – the shooting, beating and burning – took place on the same day within a two hour period of time and at locations which were only a few miles apart."[16] Furthermore, the government recognizes that "[e]ven if Count 3 were severed" it would still be necessary for the government "to present evidence of the . . . treatment [of EK and WT by Scheuermann and McRae] in order to provide context for the subsequent actions of McRae and Scheuermann."[17] The government also asserts that "in order to establish the obstruction counts referenced in Counts 6 and 8, the government will need to establish the defendants' knowledge of the conduct that is charged in Counts[ ]1, 2, 4, 5, and 7."[18]

The government additionally asserts that "Italiano was also present at Habans School [where EK and WT] were detained."[19] According to the government, in order to establish that Italiano and McCabe made false statements regarding Henry Glover's shooting and burning, the

---

[14] R. Doc. No. 129, pg. 4.
[15] Id.
[16] R. Doc. No. 185, pg. 4.
[17] Id. at 6-7. The jury will also need to evaluate the credibility of EK and WT. In order to do so, testimony relating to their treatment will be necessary so that the jury can evaluate their testimony with an understanding of the circumstances which may color their individual perspectives.
[18] R. Doc. No. 185, pg. 7.
[19] Id. at 4.

government must demonstrate to the jury the true circumstances surrounding Henry Glover's shooting and subsequent burning.

Finally, Warren argues joinder is improper because it would be "prejudice in the extreme" to require him "to sit through what the government estimates will be three weeks of testimony which, for the most part, has absolutely nothing to do with him."[20] This argument is unavailing because it confuses the inquiry this Court must undertake in determining whether severance is appropriate with the analysis the Court must conduct in determining whether joinder is proper. See Rittweger, 524 F.3d at 178-79 (2nd Cir. 2008) (Sotomayor, J.). "The question of whether [codefendants] face[] prejudice—or [are] in fact prejudiced–under Rule 8(b) presents the altogether separate inquiry of whether the trial of [such] defendants should [be] severed under Rule 14." Id. (citing Schaffer v. United States, 362 U.S. 511, 517, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)). Accordingly, whether or not Warren will suffer prejudice as a result of joinder does not impact this Court's determination that the superseding indictment properly joins him with his codefendants.

III. SEVERANCE

Alternatively, Warren argues that this Court should sever the charges against him from those of his codefendants owing to the prejudice he will suffer if a joint trial is conducted. Federal Rule of Criminal Procedure 14(a) states:

> If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

As the Fifth Circuit has held, "If defendants have been properly joined, the district court should grant a severance only if there is a serious risk that a joint trial would compromise a

---

[20] R. Doc. No. 131-1, pg. 6.

specific trial right of one of the defendants or prevent the jury from making a reliable determination of guilt or innocence." United States v. Bermea, 30 F.3d 1539, 1572 (5th Cir. 1997) (citing Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993)). Indeed, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." Zafiro, U.S. 534 at 541. Furthermore, concerns of judicial economy can outweigh the prejudice a defendant suffers when properly joined with codefendants. See United States v. Ellender, 947 F.2d 748, 754 (5th Cir. 1991).

Warren argues that this Court should sever his charges because he will suffer prejudice as a result of "spillover effect" from his codefendants in addition to the possibility that his codefendants will raise mutually antagonistic defenses. Each of these potential sources of prejudice is discussed below.

A. SPILLOVER EFFECT

Warren argues that this Court should grant a severance because he will be "unfairly prejudiced by the 'spill-over effect.'"[21] However, "[a] spillover effect, by itself, is an insufficient predicate for a motion to sever." United States v. Hidalgo, No. 08-51161, 2010 WL 2782797 (5th Cir. July 12, 2010) (quoting United States v. Bieganowski, 313 F.3d 264, 287 (5th Cir. 2002)) (internal quotation marks omitted). Furthermore, spillover "is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the Government." United States v. Harrelson, 754 F.2d 1153, 1175 (5th Cir. 1985) (internal quotation marks and citations omitted). Although Warren cites some authority pertaining to spillover effect, he fails to advise this Court how spillover effect will prejudice his case.

---

[21] R. Doc. No. 131-1, pg. 7.

Accordingly, the blanket assertion that Warren will suffer prejudice as a result of spillover effect does not persuade this Court that severance is appropriate.

B.  ANTAGONISTIC DEFENSES

Warren argues that because mutually antagonistic defenses will likely arise during trial, severance is warranted. Nevertheless, as Warren recognizes, the United States Supreme Court has held that "[m]utually antagonistic defenses are not prejudicial per se." Zafiro, 506 U.S. at 538. "Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id. at 539. Furthermore, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro, 506 U.S. at 540.

As the Fifth Circuit has held, in order to warrant a severance, antagonistic defenses "must be so diametrically opposed that the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant." United States v. Daniels, 281 F.3d 168, 177 (5th Cir. 2002) (internal quotation marks and citation omitted). Codefendants' defenses are mutually antagonistic when one "defendant's defense require[s] the jury to find the other [defendant] guilty." United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir. 1981) (emphasis added).

For example, in Daniels, three security guards at Angola prison – Daniels, Sayes, and Swan – were involved in the brutal beating of an inmate. Daniels, 281 F.3d at 175. As the Fifth Circuit described the facts of the case:

> [The inmate] was removed from his cell and Daniels began violently kicking and punching [the inmate]. Sayes witnessed the beating and neither did nor said anything to attempt to stop it.

15

> Daniels moved [the inmate] down the tier, to the lobby, where Swan joined Daniels in attacking [the inmate]. At one point, Swan apparently struck Jackson forcefully on the side of the head with a shoe. Although Sayes was not indicted for actively participating in the attack, there was testimony that Sayes encouraged the attackers verbally and even struck a few blows himself.

Id. The three security guards were indicted together. Id. at 173. Count 1 charged Daniels and Swan with willfully assaulting and beating the inmate, depriving the inmate of his right to be free from cruel and unusual punishment. Id. Count 2 charged that Sayes deprived the inmate of his right to be kept free from harm while in official custody when Sayes willfully failed to prevent Daniels and Swan from beating the inmate. Count 3 charged Daniels, Sayes, and Swan with willfully depriving the inmate of his right not to have cruel and unusual punishment inflicted upon him by willfully preventing the inmate from receiving medical care and treatment. Id. at 173-74. Before trial, "[e]ach defendant urged severance . . . and the [severance] motions were reurged at various points during the trial." Id. at 176. The district court denied such motions. Id.

The Fifth Circuit affirmed the district court. In doing so, the Fifth Circuit emphasized that codefendants' defenses are mutually antagonistic only when "the conflict . . . concern[s] the core or essence of [such defenses], not merely 'minor or peripheral matters.'" Id. at 177 (citation omitted). Describing the events that transpired at trial, the Fifth Circuit observed that "Sayes testified that he witnessed Daniels and Swan attacking [the inmate] and that he was so shocked by the brutality of the attack that he was paralyzed into inaction." Id. at 176. On the other hand, the defenses of Daniels and Swan "evolved into an argument that the beating did not occur during their shift." Id. Although Sayes testified that Daniels and Swan beat the inmate, while Daniels and Swan defended themselves by arguing that they had not committed the beating, the

16

Fifth Circuit was skeptical that the security guards had asserted mutually antagonistic defenses.

Id. at 177. As the Fifth Circuit explained:

> The core of Sayes's defense was not that Daniels and Swan were guilty of the beating; it was that Sayes was too paralyzed to act when he witnessed a beating, by whomever it was performed. The identity of Jackson's assailants was peripheral to Sayes's 'paralysis' defense. The essence of Daniels and Swan's defense was that they were wrongly identified as Jackson's assailants. It is true that, were a jury to conclude that Daniels and Swan were not Jackson's attackers they would be faced with a question regarding Sayes's credibility. But the jury could believe the core of Saye's [sic] defense–that he was paralyzed–and still believe that he was mistaken about the identify of his attackers.

Id.

Given the Fifth Circuit's emphasis on analyzing the "core" of codefendants' defenses, the Court does not find that Warren has made a showing that his codefendants have raised or will raise mutually antagonistic defenses sufficient to require severance. Warren argues that this Court should sever those counts of the superseding indictment that pertain to him because Scheuermann and McRae are likely to assert defenses that are mutually antagonistic to his own. However, as both Warren and the government observe, neither Scheuermann nor McRae are charged with causing Henry Glover's death. Instead, Scheuermann and McRae are charged in connection with the beating of EK and WT, the burning of WT's car, and the burning of Henry Glover's body. Accordingly, as the government suggests, the core of such defendants' defenses "will likely be to either deny involvement in the burning or allege that their actions were justified and that they did not have the requisite intent to commit the crimes. Thus, the core of their defenses will not include proof of who killed Glover."[22]

---

[22] R. Doc. No. 129.

Warren argues that severance is warranted because he will attempt to blame Henry Glover's death on Scheuermann and McRae. In turn, Warren argues, Scheuermann and McRae will attempt to shift the blame back on Warren because Scheuermann and McRae will worry that "if the jurors believe that they might in fact have been responsible for [Henry Glover's] death [the jury] would be much more likely to convict on the substantive counts with which they are charged."[23] Accordingly, Warren asserts that his defense is mutually antagonistic to the defenses of Scheuermann and McRae.

First, as noted above, it is unlikely that the "core" of Warren's codefendants' defenses will be that Warren caused Henry Glover's death. Only Warren is charged with causing Henry Glover's death. Accordingly, any argument asserted by Warren's codefendants with respect to Warren's culpability for causing Henry Glover's will likely be "peripheral" to such codefendants' defenses. See Daniels, 281 F.3d at 177.

Second, if Warren attempts to shift the blame for Henry Glover's death to Scheuermann and McRae and they, in turn, attempt to shift the blame for Henry Glover's death back to Warren, all three men could still be acquitted. See id. For example, Warren could persuade the jury that Scheuermann and McRae caused Henry Glover's death and the jury could reject the attempts of Scheuermann and McRae to shift the blame back to Warren. The jury could acquit Warren of causing Henry Glover's death and acquit Scheuermann and McRae of the crimes they are charged with in counts 3 through 7. Because there has been no showing that a defense likely to be raised by a defendant in this case will necessarily require the jury to find a codefendant

---

[23] R. Doc. No. 131-1, pg. 12.

18

guilty, the Court cannot conclude that the defendants in this case will raise mutually antagonistic defenses.[24]  See id.

Third, as the government notes, Warren's conviction on count 1 of the superseding indictment can result in a life sentence if Warren "attempted to kill" Henry Glover.  The fact that another codefendant actually caused the death of Glover is not a defense to the "attempt to kill" language of the superseding indictment.[25]  Accordingly, the Court cannot conclude that the "core" of Warren's defense will be that Scheuermann and McRae caused Henry Glover's death.

Finally, as noted above, a defendant is not entitled to a severance merely because his defense strategy would have a greater chance of success if he is tried alone.  Zafiro, 506 U.S. at 540.  If necessary, this Court can guard against the prejudicial effect of the codefendants' trial strategies through tailored jury instructions.  Id. at 541.

Accordingly, **IT IS ORDERED** that Warren's motion[26] is **DENIED**.

New Orleans, Louisiana, September 27th, 2010.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[24] The Court further notes that the Fifth Circuit has determined that jury instructions can suffice to cure any prejudice that may result when counsel for one defendant attempts to cast blame on a codefendant who cannot show that a joint trial compromised such codefendant's right to a fair trial.  McGraw v. Lynn, 990 F.2d 625, 1993 WL 117782, *2 (5th Cir. 1993) (unpublished).

[25] R. Doc. No. 129.  The government argues that "[e]ven if the jury believes that Glover's death was not caused by Warren, he can still be convicted if the jury finds that his unlawful shooting was an attempt to kill Glover."  R. Doc. No. 129.

[26] R. Doc. No. 131.