UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 10-154** |
| **DAVID WARREN ET AL.** | **SECTION "I"** |

## ORDER AND REASONS

Before the Court is a motion[1] in limine to exclude the testimony of proposed government expert Charles J. Key or, in the alternative, for an evidentiary hearing on the matter, filed by the defendant, David Warren. The government opposes the motion.[2] The Court assumes familiarity with the factual background and procedural posture of the case.

## STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] R. Doc. No. 771.

[2] R. Doc. No. 777.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co.*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of

standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert,* the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note)).

## DISCUSSION

On June 7, 2013, the government gave notice of its intent to introduce the expert testimony of Key, who testified as a "use of force, police training, police policy and procedures, firearms, incident reconstruction, and ballistics" expert in the government's rebuttal case at

3

Warren's first trial.[3] At the upcoming trial, the government seeks to qualify Key as an expert in "use of force and police training, policy, and procedures" and "firearms and ballistics."[4] On August 5, 2013, Warren filed a motion to exclude Key's testimony on police policy and procedures,[5] forensic-related matters,[6] and firearms and ballistics.[7] The Court considers each subject in turn.

## I.     Police Policy & Procedures

With respect to Key's testimony on police policy and procedures, Warren argues that it is inadmissible under *Daubert* and Rule 702 because it will not assist the trier of fact and it is not the product of reliable principles and methods. Alternatively, Warren requests that Key be prohibited from testifying as to legal conclusions.

### A.     General Admissibility

Warren argues that Key's testimony fails to satisfy the *Daubert* factors.[8] However, as the Supreme Court has concluded, "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150 (quotation and modification omitted). Considering the *Daubert* factors, as well as the nature of the issues, Key's expertise, and the

---

[3] R. Doc. No. 777, at 2; *see also* R. Doc. No. 575, at 95, 100-01.

[4] R. Doc. No. 777, at 1; *see also* R. Doc. No. 777, at 9 ("Key's expert testimony will [] focus on the factual issues of police training, standard police procedures, and the policies that govern an officer's use of force when discharging his weapon.").

[5] R. Doc. 771-1, at 5.

[6] R. Doc. No. 771-1, at 11.

[7] R. Doc. No. 771-1, at 14.

[8] R. Doc. No. 771-1, at 5.

subject of his testimony, the Court concludes that Key's expert testimony on police policy and procedures will help the jury to understand the evidence or to determine a fact in issue, and Key's testimony is the product of reliable principles and methods. Fed. R. Evid. 702.

With respect to whether Key's scientific, technical, or other specialized knowledge will assist the jury, case law strongly supports the admission of expert testimony on police policies and procedures in cases where an officer is alleged to have used excessive force.[9] *E.g.*, *Kopf v. Skrym*, 993 F.2d 374, 378-79 (4th Cir. 1993) ("[E]xpert testimony has often been admitted [in excessive force cases].").[10] In particular, "where the standard [applied by the jury] is not defined by the generic--a reasonable *person*--but rather by the specific--a reasonable *officer*--it is more likely that Rule 702's line between common and specialized knowledge has been crossed." *Id.* at 378. A jury that must assess "an officer's training on using a gun . . . may often be assisted by expert testimony." *Id.* at 379; *see also Holiday v. City of Jackson*, No. 11-202, 2013 WL 3821607, at *4 n.2 (E.D. Miss. July 23, 2013) (permitting expert testimony with respect to a defendant's reasonableness in exercising lethal force).

With respect to the reliability of Key's principles and methods, Warren's support for his contention that expert witness testimony should not be permitted on police use of force, practices, policies, and procedures is not persuasive. Warren's primary authority is essentially an opinion piece that, while authored by an Assistant Attorney General of Maryland, does not even wholeheartedly support Warren's argument. Rather, the author only cautions practitioners and courts alike to scrutinize closely the qualifications and reliability of expert witnesses on police

---

[9] Although many of the cases cited by the parties and discussed by the Court are civil cases, the parties have not suggested that the same principles would not apply in this criminal case.

[10] The court in *Skrym* concluded that the district court abused its discretion in excluding expert testimony on an officer's use of a police dog and slapjacks (a type of club). 993 F.2d at 378-79.

practices. Karen J. Kruger, *The Role and Impact of Police Practices Experts on Litigation*, The Police Chief, Aug. 2013, at 4.

Additionally, Warren cites a single case from the Sixth Circuit, in which the court held that "there is no such 'field' as 'police policies and practices.'" *Berry v. City of Detroit*, 25 F.3d 1342, 1352 (6th Cir. 1994). Read in context, however, this statement in *Berry* goes to the need to identify the relevant specialized knowledge at issue with more specificity, not an overall lack of specialized knowledge on the part of police officers or an overall lack of reliability in their principles and methods. *See id.* at 1352 (comparing declaring an expert in "police policies and practices" to "declaring an attorney an expert in the law").

A Fifth Circuit case illustrates the distinction. In *Thomas*, the Fifth Circuit observed, "General experience as a police officer, standing alone, is not sufficient to qualify the officer as an expert in every area of law enforcement." *Thomas v. City of Monroe*, No. 97-30695, 1998 WL 611550, at *5 (5th Cir. Aug. 19, 1998) (affirming exclusion of testimony where officer testified that "he had not dealt in [the relevant areas] very often, he did not instruct people in those areas, and he had no special training in those areas"). In contrast, the Fifth Circuit has affirmed the admission of expert testimony as to motorcycle accidents and leg protection where the expert witness "was on the Miami police motor squad for approximately nine years, and has investigated hundreds of motorcycle accidents." *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317-18 (5th Cir. 1995). Here, the government characterizes Key as an expert in "use of force and police training, policy, and procedures" and "firearms and ballistics,"[11] not as a general law

---

[11] R. Doc. No. 777, at 1; *see also* R. Doc. No. 777, at 9 ("Key's expert testimony will [] focus on the factual issues of police training, standard police procedures, and the policies that govern an officer's use of force when discharging his weapon.").

enforcement expert, and admission of Key's testimony is consistent with *Berry*, *Thomas*, and *Satcher*.

In light of the foregoing, the Court concludes that Key's testimony will assist the jury and is "the product of reliable principles and methods." Fed. R. Evid. 702. To the extent that Warren argues otherwise, his motion is **DENIED**. However, the Court **DISMISSES WITHOUT PREJUDICE** Warren's arguments as to whether Key's testimony is "is based upon sufficient facts or data" and whether Key "has reliably applied the principles and methods to the facts of the case." *Id.*

### B. Testimony as to Probable Cause

Warren asserts that Key should be limited to testimony that does not include any reference to "probable cause" or any other legal conclusion.

"Rule 704(a) 'does not allow a witness to give legal conclusions,'" including, for example, whether use of force was reasonable for purposes of the Fourth Amendment. *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (quoting *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999)); *see also McBroom v. Payne*, 478 F. App'x 196, 199 (5th Cir. 2012). The government states that it does not intend to introduce testimony that would constitute legal conclusions, including whether probable cause existed to shoot Glover.[12] Moreover, the government asserts that testimony as to the factual issues in the case, including whether Warren's actions were consistent with accepted standards of police practice, will not constitute

---

[12] R. Doc. No. 777, at 9.

an impermissible legal conclusion.[13] Insofar as Warren broadly seeks the exclusion of testimony that constitutes a legal conclusion, his motion is **DISMISSED AS MOOT**.

Whether a particular question or answer constitutes a legal conclusion may be addressed on a more individual basis at trial. *See United States v. Teel*, 299 F. App'x 387, 389 (5th Cir. 2008) (observing, in an 18 U.S.C. § 242 case, that "the district court properly barred [an] expert from going beyond consideration of the conduct to offer legal conclusions regarding whether the assault on [the victim] constituted excessive force); *see also United States v. Perkins*, 470 F.3d 150, 158-59 & n.13 (noting, in an 18 U.S.C. § 242 case, conflicting authority as to the permissible scope of expert testimony on reasonable force); *Kopf*, 993 F.2d at 379 ("[The expert] should clearly have been permitted to testify as to the prevailing standard of conduct for the use of slapjacks, even if he had been precluded from giving an opinion on the ultimate issue of whether the use in this case was reasonable."); *Samples v. City of Atlanta*, 916 F.2d 1548, 1550 (11th Cir. 1990) (An expert witness's testimony on police reasonableness may permissibly address "prevailing standards in the field of law enforcement.").

## II.     "Forensic-Related Matters"

Warren argues that Key should not be permitted to testify as to where Henry Glover was shot and "any other forensic related matters," although Warren does not identify what those other matters may be. In its response, the government stated that it "does not intend to introduce Key's legal conclusions or opinions about where Warren's gunshot entered Glover's body."[14]

---

[13] R. Doc. No. 777, at 9.

[14] R. Doc. No. 777, at 4.

Accordingly, the motion is **DISMISSED AS MOOT** relative to testimony as to where Henry Glover was shot.

### III.     Firearms & Bullets

The government seeks to permit Key to testify as to certain information relative to the firearm that Warren used to shoot Henry Glover. In particular, the government contends that Key "will provide reliable testimony about how the rifle functions, how the bullets perform coming out of that rifle, and other related firearm and ballistics matters."[15]

Warren argues that the field of ballistics has too much uncertainty to permit expert testimony.[16] He cites a district court opinion that characterizes courts' reliance on prior decisions admitting ballistics evidence as "troubling" because "[i]t runs the risk of 'grandfathering in irrationality.'" *United States v. Green*, 405 F. Supp. 2d 104, 123 (D. Mass. 2005). But *Green*, and the cases that it critiques, including *Hicks*, address "the matching of spent shell casings to the weapon that fired them." *Green*, 405 F. Supp. 2d at 1022-23 (quoting *Hicks*, 389 F.3d at 526). As Warren acknowledges, this case does not involve that issue.[17] Moreover, while Warren notes that "no bullet was ever recovered" and this makes it "impossible to render ballistics determinations with any reasonable degree of certainty,"[18] Warren does not identify how Key's assessment of Warren's firearm, the identity of which is not at issue, requires recovery of the bullet. To the

---

[15] R. Doc. No. 777, at 10. These matters may include the "power, accuracy, or reliability of shots fired with the rifle and bullets at issue." R. Doc. No. 777, at 12.

[16] R. Doc. No. 777-1, at 15.

[17] R. Doc. No. 771-1, at 17.

[18] R. Doc. No. 771-1, at 17.

extent that Warren seeks to exclude Key's testimony based on the contention that the field of ballistics is unreliable, the motion is **DENIED**.

Warren additionally argues that information on ballistics, including information on the caliber of bullet and muzzle velocity, is not relevant because "there is no question that David Warren shot Henry Glover. The [only] issue is whether he was justified to do so."[19] Warren further argues that this testimony will be "extraneous" and prejudicial because it will "perpetuate the false notion of Warren as a trigger-happy, firearm-obsessed assassin, while doing nothing to clarify the issues at hand."[20] The government responds that testimony on firearms and ballistics will be helpful because it goes to Warren's intent, or willfulness, and credibility.[21] The government additionally contends that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice pursuant to Rule 403.

The Court **DEFERS** ruling on the relevance of Key's testimony on firearms and ballistics because this issue overlaps with one of the other pending motions in limine.[22]

---

[19] R. Doc. No. 771-1, at 16.

[20] R. Doc. No. 771-1, at 17.

[21] The government contends that this testimony will "help the jury understand his state of mind when he chose to carry and use his SIG rifle rather than his NOPD-issued service weapon, when he used that rifle to fire a 'warning shot' at a man 100 yards away, and when he later used that weapon to shoot Glover from 60 to 70 feet away." The government also asserts, "Key's testimony about the power, accuracy, and terminal distance of Warren's rifle and bullets also rebuts Warren's claim that he thought he missed when he shot Glover." R. Doc. No. 777, at 11-12.

[22] R. Doc. No. 810, at 2; R. Doc. No. 810-1, at 10-12.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Warren's motion in limine is **DENIED IN PART**. The Court rejects Warren's arguments that Key's testimony on police policy and procedures will not assist the jury and that it is not the product of reliable principles and methods. Moreover, the Court rejects Warren's arguments premised on the unreliability of ballistics.

**IT IS FURTHER ORDERED** that Warren's arguments as to whether Key's police policy and practices testimony is "is based upon sufficient facts or data" and whether Key "has applied the principles and methods reliably to the facts of the case" are **DISMISSED WITHOUT PREJUDICE** to Warren's right to raise them at trial.

**IT IS FURTHER ORDERED** that the Court **DEFERS** ruling on the relevance of Key's testimony as to firearms and ballistics pending consideration of a separately filed and currently pending motion in limine.

**IT IS FURTHER ORDERED** that the motion is **DISMISSED AS MOOT** in all other respects.

New Orleans, Louisiana, October 17, 2013.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**